Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
Grace A. Rawlins
grawlins@ipcounselors.com
Jodi-Ann McLane (*pro hac vice* forthcoming)
jmclane@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*Lashify, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LASHIFY, INC.,<br><br>*Plaintiff*<br><br>v.<br><br>QINGDAO SERAFINA INTERNATIONAL TRADE CO., LTD a/k/a QINGDAO VELEASHA IMPORT AND EXPORT CO., LTD. d/b/a VELEASHA a/k/a VELEASHA US,<br><br>*Defendant* | **CIVIL ACTION NO.:**<br><br><br>**COMPLAINT**<br><br>**Jury Trial Requested**<br><br>**FILED UNDER SEAL** |

**GLOSSARY**

| Term | Definition |
|---|---|
| **Plaintiff or Lashify** | Lashify, Inc. |
| **Defendant** | Qingdao Serafina International Trade Co., Ltd a/k/a Qingdao Veleasha Import and Export Co., Ltd. d/b/a Veleasha a/k/a Veleasha US |
| **Amazon** | Amazon.com, a Seattle, Washington-based, online marketplace and e-commerce platform owned by Amazon.com, Inc., a Delaware corporation, that allows manufacturers and other third-party merchants, like Defendant, to advertise, distribute, offer for sale, sell and ship their retail products, which, upon information and belief, primarily originate from China, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *ex parte* Application for: 1) a temporary restraining order; 2) an order restraining Defendant's Website (as defined *infra*), Defendant's User Accounts (as defined *infra*), Defendant's Merchant Storefront (as defined *infra*) and Defendant's Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service; and 5) an order authorizing expedited discovery |
| **Lotti Dec.** | Declaration of Sahara Lotti in Support of Plaintiff's Application |
| **Nastasi Dec.** | Declaration of Gabriela N. Nastasi in Support of Plaintiff's Application |
| **Lashify System** | Do-It-Yourself ("DIY") artificial lash extension system claimed by the Lashify Patent. |
| **Gossamer® Lashes** | Lashify's branded artificial lash extensions that are designed to be applied to the underside of a user's natural lashes, and which were invented by Sahara Lotti and practice the Lashify Patent |
| **Control Kit®** | Kit sold by Lashify which includes Gossamer® Lashes, a patented wand for fusing the Gossamer® Lashes to the underside of a user's natural lashes, a bond for securing the Gossamer® Lashes to the underside of a user's natural lashes, a sealer for providing protection to the Gossamer® Lashes, and a luxury case. |
| **Lashify Website** | https://www.lashify.com/ |
| **Lashify Amazon Storefront** | https://www.amazon.com/lashify/s?k=lashify |
| **Lashify Social Media** | Facebook https://www.facebook.com/lashify/<br>Instagram https://.instagram.com/lashify<br>YouTube https://www.youtube.com/@Lashify and<br>TikTok https://www.tiktok.com/@lashify |

| Lashify Patent | U.S. Patent No. 11,253,020 ('020 patent), entitled Artificial Lash Extensions |
| --- | --- |
| Infringing Products | Lash clusters and kits that include lash extensions designed to be applied to the underside of natural lashes that infringe one or more claims of the Lashify Patent |
| Infringing Listings | Defendant's listings for Infringing Products |
| Defendant's Website | https://veleashalashes.com |
| User Accounts | Any and all websites owned and/or operated by Defendant (including, without limitation, Defendant's Website), any and all social media accounts through which Defendant, its respective officers, employees, agents, servants and all persons in active concert or participation with Defendant, advertises, promotes, offers for sale and/or sells Infringing Products including, without limitation, Instagram (https://www.instagram.com/veleasha.lashes.wholesale), Facebook (https://www.facebook.com/profile.php?id=100040836814520), Pinterest (https://www.pinterest.com/veleashalashes/), TikTok (https://www.tiktok.com/@veleasha_lashes) held and/or operated by Defendant, and any and all accounts with online marketplace platforms such as Amazon, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendant, its respective officers, employees, agents, servants and all persons in active concert or participation with Defendant |
| Merchant Storefront | Any and all User Accounts through which Defendant, its respective officers, employees, agents, servants and all persons in active concert or participation with Defendant operates storefronts to manufacture, import, export, advertise, market, promote, distribute, display, make, use, offer for sale, sell and/or otherwise deal in Infringing Products, which are held by or associated with Defendant, its respective officers, employees, agents, servants and all persons in active concert or participation with Defendant |
| Defendant's Assets | Any and all money, securities or other property or assets of Defendant (whether said assets are located in the U.S. or abroad) |
| Defendant's Financial Accounts | Any and all financial accounts associated with or utilized by Defendant or Defendant's User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |
| Financial Institutions | PayPal Inc. ("PayPal" and/or "Venmo"), Payoneer Inc. ("Payoneer"), Amazon payment services (e.g., Amazon Pay) and PingPong Global Solutions, Inc. ("PingPong") |
| Third Party Service Providers | Any third party providing services in connection with Defendant's User Accounts, including online marketplace platforms, including, without limitation, Amazon, Internet |

|  | Service Providers, website hosts and/or registrars such as Alibaba Cloud Computing (Beijing) Co., Ltd. ("Alibaba Cloud"), social media platforms including Facebook, Instagram, Pinterest, TikTok and YouTube, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendant, its respective officers, employees, agents, servants and all persons in active concert or participation with Defendant manufactures, imports, exports, advertises, markets, promotes, distributes, makes, uses, offer for sales, sells and/or otherwise deals in Infringing Products which are hereinafter identified as a result of any order entered in this action, or otherwise. |

Plaintiff, a corporation organized and existing under the laws of the State of Delaware, alleges as follows:[1]

## NATURE OF THE ACTION

1.      This action involves claims for patent infringement under 35 U.S.C. §§ 271 *et seq.* arising from the infringement of the Lashify Patent, including, without limitation, by manufacturing, advertising, marketing, promoting, distributing, making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use, of unlicensed Infringing Products that copy Plaintiff's Lashify System and infringe the Lashify Patent, by Defendant.

## JURISDICTION AND VENUE

2.      This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 28 U.S.C. § 1338(a) as an action arising out of violations of the Patent Act; pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.

3.      Personal jurisdiction exists over Defendant in New York pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendant regularly conducts, transacts and/or solicits business in New York, and/or derives substantial revenues from their business transactions in New York and/or otherwise avails itself of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendant does not offend traditional notions of fair play and due process, and/or Defendant's illegal infringing actions caused injury to Plaintiff in New York such that Defendant should reasonably expect such actions to have consequences in New York.  For example:

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Glossary.

a.    Upon information and belief, Defendant was and/or is systematically directing and/or targeting its business activities at consumers in the U.S., including New York, through accounts with online marketplace platforms such as Amazon, Defendant's Website, and social media accounts as well as any and all as yet undiscovered User Accounts, through which consumers in the U.S., including New York, can view Defendant's Merchant Storefront that Defendant operates, uses to communicate with consumers regarding its Infringing Listings and to place orders for, receive invoices for, and purchase Infringing Products for delivery in the U.S., including New York, as a means for establishing regular business with the U.S., including New York.

b.    Upon information and belief, Defendant is a sophisticated seller, operating one or more commercial businesses through its User Accounts, using its Merchant Storefront and Defendant's Website to manufacture, import, export, advertise, market, promote, distribute, make, use, offer for sale, sell and/or otherwise deal in products, including Infringing Products at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically New York.

c.    Upon information and belief, Defendant accepts payment in U.S. Dollars and offers shipping to the U.S., including to New York, and specifically to the New York Address.

d.    Upon information and belief, Defendant has transacted business with consumers located in the U.S., including New York, for the sale and shipment of Infringing Products.

e.    Upon information and belief, Defendant is aware of Plaintiff, its Lashify Products and the Lashify Patent and is aware that its illegal, infringing actions alleged

2

herein are likely to cause injury to Plaintiff in the U.S. and specifically, in New York.

4.    Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendant conducts, transacts and/or solicits business in New York.

## THE PARTIES

5.    Plaintiff Lashify, Inc. is a Delaware corporation with a principal place of business in North Hollywood, California.

6.    Upon information and belief, Defendant is a merchant on Amazon, through which Defendant offers for sale and/or sells Infringing Products, with a principal place of business at No. 177, Jufeng Road, Licang District, Qingdao City, Room 301, Unit 1, No. 9, Wanda Central Mansion, Qingdao City, Shandong, 266000.

## GENERAL ALLEGATIONS

### Lashify's Innovative Lash Extension System

7.    Lashify was founded by Ms. Sahara Lotti (hereinafter, "Ms. Lotti") who, in 2017, recognizing the need for innovation in the industry, invented the most natural-looking false lash system in the industry after extensive studies of the human eyelid, the shape of lash lines, and various chemical compositions, and testing various prototypes and potential new product options on her own eyelashes. The Lashify System is a revolutionary, award winning DIY luxury lash extension system that creates salon quality lash extensions in record time and in the comfort of one's home. The Lashify System is easy to use and, unlike salon extensions, is damage-free to natural lashes, and creates infinite possibilities for all eye shapes in minutes.

8.    The Lashify System includes its innovative Gossamer® Lashes, the lightest, flattest, and most natural-looking artificial lash extension, which are designed to be applied to the underside of the user's natural lashes, as opposed to traditional strip-style lashes that are adhered to the skin of the upper eyelid, above the lashes. Gossamer® Lashes merge with the natural lashes

to extend the natural lashes — without the time-consuming and damaging process offered by the salons. Below is a photo of a Gossamer® Lash being applied:



Gossamer® Lashes under eyelash application

9.     Gossamer® Lashes are designed to fit on the underside of the user's natural lashes due to, for example, their thin base and lightweight structure and merge with the natural lashes to extend them. Gossamer® Lashes are available in a variety of lengths, fluffiness, curvatures, and colors, and thus can be applied in virtually unlimited positions and arrangements. Indeed, users devise "lash maps" specifying locations of different types of Gossamer® Lashes along one's natural lash line to achieve looks ranging from natural to glamorous to dramatic, and even colored.

10.    Over 40 styles of Gossamer® Lashes are currently offered by Lashify, and new styles are continuously being developed.

11.    The Control Kit®, pictured below, is sold by Lashify to introduce new customers to the Lashify System. To date, the Lashify System has been used by hundreds of thousands of customers.



12.    Today, because of significant and novel product features for which Lashify has obtained protection from the United States Patent and Trademark Office, Lashify is recognized as a market leader in the design of revolutionary lash extension products. Specifically, Lashify owns an extensive worldwide intellectual property portfolio, including 600+ United States and foreign patents, federally registered trademarks as well as many pending patent and trademark applications.

13.    Relevant to the instant action, Lashify is the assignee of U.S. Patent No. 11,253,020 ('020 patent) entitled Artificial Lash Extensions. The '020 patent claims an artificial lash extension system including multiple lash extensions that are designed to attach to an underside of a user's natural lashes. Each of the lash extensions includes clusters of artificial hairs with 1) at least two artificial hairs; and 2) a base from which the at least two artificial hairs protrude. The '020 patent also claims that at least some of the artificial hairs are connected to one another at the base by at least an application of heat. A true and correct copy of the '020 patent is attached as **Exhibit A**.

14.    As shown in the claim chart attached as **Exhibit B**, incorporated herein by reference, and in the screenshots below from Defendant's Amazon listings, the Infringing Products are a lash extension system because they include lash extensions that have a base designed to attach to the underside of a user's natural lashes. The lash extensions also have clusters of artificial hairs protruding from the base.  At least some of the artificial hairs artificial hairs are connected

to one another at the base by at least an application of heat, as claimed in the Lashify Patent and shown in the Amazon storefront:



Closeup of base and Clusters:

Base with artificial hair clusters connected to one another at the base through application of heat.

Also, as described in the Amazon listings (underlining added):

- 😍 Great Quality:Our Lashes choose high-quality PBT material and the individual lashes 30D/40D/50D looks real gorgeous results, not plasticky, The curls last long and cluster eyelash are lightweight, heat-bonded technology will not easily fall apart.

15.    The Lashify System is sold direct to consumers via the Lashify Website, through its own brick and mortar store in Los Angeles, California, the Lashify Amazon Storefront, and is advertised for sale through Lashify Social Media. The Lashify System is also sold through the retail store chain Selfridges in the UK.

16.    The Lashify Control Kit® typically retails for $125 and its Gossamer® Lashes generally retail for between $17-$28.

17.    Renée Zellweger, Reese Witherspoon, Nicole Kidman, Lupita Nyong'o, Kristen Bell, Kourtney Kardashian, Claire Danes, Melissa McCarthy, Janelle Monáe, Cynthia Nixon, Jessica Simpson, Maggie Gyllenhaal, Tracie Ellis Ross, Salma Hayek, Awkwafina, Liv Tyler, and Lena Dunham are just a few of the artists and influential figures who have used the Lashify System. The Lashify System "walked" the red carpets at the Golden Globes, Grammys, Emmys, Met Gala, and other globally followed events. The Lashify system has been used by influential makeup artists Ariel Tejada, Jessica Smalls, Nick Barose, Anton Khachaturian, Matthew Van Leeuwen, Kirin Bhatty, and many more. It has been featured in publications such as InStyle, Elle,

Glamour, Vogue, Allure, The Knot, Shape, and many others.

18.    The Lashify System has received numerous industry awards, including 2022 InStyle Beauty Editors' Pick, 2021-2022, The Beauty Authority New Beauty Award Winner, 2021, Cosmopolitan Holy Grail Beauty Award, 2019 Glamour Beauty Award Winner, The Knot Beauty Awards 2019 Winner, and 2019 Shape Editor Pick.

19.    The success of the Lashify System is due in part to Plaintiff's innovation creating a whole new class of lashes, its extensive intellectual property portfolio, and enforcement of its intellectual property rights.

20.    Plaintiff's success is also due to its use of the highest quality materials, its innovative processes in making the Lashify System, and to its loyal, repeat consumers.

21.    Plaintiff has gone to great lengths to protect the Lashify System. Lashify has been granted over 600 patents worldwide covering the Lashify System. The Lashify System is associated with the quality and innovation that the public has come to expect from Lashify.

22.    Lashify is the lawful owner of all right, title, and interest in and to the Lashify Patent.

23.    No one other than Plaintiff and its authorized sellers are allowed to manufacture, import, export, advertise, offer for sale and sell the patented Lashify System, without the express permission of Plaintiff.

**Amazon, Defendant's User Accounts and Defendant's Website**

24.    Amazon is an online marketplace and e-commerce platform that allows manufacturers, wholesalers, and other third-party merchants, like Defendant, to advertise, distribute, offer for sale, sell and ship their wholesale and retail products originating from China[2] directly to consumers worldwide and specifically to consumers residing in the U.S., including

---

[2] *See* Juozas Kaziukenas, *Chinese Sellers Are Building Brands on Amazon,* MARKETPLACE PULSE (Dec. 6, 2018), https://www.marketplacepulse.com/articles/chinese-sellers-are-building-brands-on-amazon.

New York.

25.    Amazon is recognized as one of the leaders of the worldwide e-commerce and digital retail market and the company's net sales were $169.9 billion in the fourth quarter of 2023.[3] Sales to the U.S. make up a significant percentage of the business done on Amazon.[4] As of February 3, 2025, Amazon had a market capital of $2.48 trillion, making it the fifth most valuable company in the U.S.[5]

26.    Many of the third-party merchants that have User Accounts and operate Merchant Storefronts on Amazon, like Defendant, are located in China. These third-party merchants recently accounted for nearly half of all businesses on Amazon.[6]

27.    In Q1 of 2024, third party merchants generated $34.6 billion, accounting for 61% of Amazon's sales.[7] In Q2 of 2024, third party merchants generated $36.2 billion, growing approximately 13% on a year-over-year basis.[8]

28.    Amazon aggressively uses the Internet and television to market itself and the products offered for sale and/or sold by its third-party merchant users to potential consumers, particularly in the U.S. In 2023 alone, Amazon spent $44.4 billion on marketing, up from $42.3

---

[3] *Amazon's Record Earnings in 2023 Propelled by Strong Fourth-Quarter Results,* MSN (Mar. 8, 2024), www.msn.com/en-us/money/companies/amazon-s-record-earnings-in-2023-propelled-by-strong-fourth-quarter-results/ar-BB1ijMBv

[4] *See* Amazon.com, Inc., Quarterly Results Q4 Earnings (Form 10-K) (Feb. 1, 2024).

[5] STOCK ANALYSIS (last visited Feb. 3, 2025), https://stockanalysis.com/stocks/amzn/market-cap/.

[6] John Herrman, *The Junkification of Amazon Why does it feel like the company is making itself worse?*, NEW YORK MAGAZINE (Jan. 30, 2023), https://nymag.com/intelligencer/2023/01/why-does-it-feel-like-amazon-is-making-itself-worse.html.

[7] Daniela Coppola, *Quarterly value of Amazon third-party seller services 2017-2024,* STATISTA (May 7, 2024), https://www.statista.com/statistics/1240236/amazon-third-party-seller-services-value/#:~:text=Amazon%27s%20net%20sales%20generated%20through%20its%20third-party%20seller,fees%20and%20other%20services%20related%20to%20third-party%20sellers, Daniela Coppola, *Share of paid units sold by third-party sellers on Amazon platform from 2nd quarter 2007 to 1st quarter 2024,* STATISTA (Jul. 11, 2024), https://www.statista.com/statistics/259782/third-party-seller-share-of-amazon-platform/.

[8] *Id.*

billion the previous year.[9]

29.    As reflected in the federal lawsuits filed against third-party merchants offering for sale and selling infringing and/or counterfeit products on Amazon,[10] and as recently addressed in news reports, an astronomical number of counterfeit and infringing products are offered for sale and sold on Amazon at a rampant rate.[11]

30.    Defendant is located in China but, upon information and belief, conducts its business in the U.S. and other countries by means of its User Accounts, on its Merchant Storefront on Amazon, via Defendant's Website, as well as potentially yet undiscovered additional online marketplace platforms.

31.    Through its Merchant Storefront and Defendant's Website, Defendant offers for sale and sells lash products, including the Infringing Products, and targets and ships such products to customers located in the U.S., including New York, and throughout the world.

## Defendant's Wrongful and Infringing Conduct

32.    Unsurprisingly, the success of Lashify's innovative Lashify System attracted not just a loyal customer base, but also unscrupulous individuals and entities seeking to profit and capitalize on the fruits of Ms. Lotti's innovation, as well as the goodwill, reputation, and fame that Plaintiff has amassed.

---

[9]Daniela Coppola, *Worldwide Amazon marketing expenditure 2010-2023,* STATISTA (Feb 8, 2024), https://www.statista.com/statistics/506535/amazon-marketing-spending/#:~:text=In%20the%20fiscal%20year%202023%2C%20Amazon%E2%80%99s%20marketing%20spending,42.3%20billion%20U.S.%20dollars%20in%20the%20previous%20year, Daniela Coppola, Share of paid units sold by third-party sellers on Amazon platform from 2nd quarter 2007 to 4th quarter 2023, STATISTA (Feb 8, 2024), https://www.statista.com/statistics/259782/third-party-seller-share-of-amazon-platform/.
[10] *See, e.g., Apple Inc. v. Mobile Star LLC,* No. C17-1120 RAJ (W.D. Cal. Aug. 4, 2017) and *Diamler AG v. Amazon.com, Inc.*, 16-cv-00518-RSM (W.D. Wash. Mar. 11, 2019).
[11] Brittney Myers, *Some Shoppers Are Fleeing Amazon Because of Counterfeit Goods*, THE ASCENT (Jan. 17, 2023), https://www.fool.com/the-ascent/personal-finance/articles/some-shoppers-are-fleeing-amazon-because-of-counterfeit-goods/; *see* Brendan Case, *Amazon, Third-Party Sellers Spur Fake Goods, Group Says*, BLOOMBERG (Oct. 13, 2021), https://www.bloomberg.com/news/articles/2021-10-13/amazon-third-party-sellers-spur-counterfeit-boom-group-says#xj4y7vzkg.

33.    Plaintiff has gone to great lengths to protect its interests and enforce against infringement of the Lashify Patent, and therefore investigates and enforces against such activities.

34.    For example, Plaintiff learned of Qingdao Lashbeauty Cosmetic Co., Ltd, d/b/a Worldbeauty ("Worldbeauty"), who blatantly copied the Lashify System and infringed the Lashify Patent.  Plaintiff brought an action for patent infringement, 6:22-cv-776 in the U.S. District Court for the Western District of Texas, and on August 23, 2024, a federal jury found that Worldbeauty infringed the Lashify Patent. The Lashify Patent was also found to be valid, and the infringement was found to be willful under 35 U.S.C. § 284.  A copy of the judgment is attached as **Exhibit C**.

35.    Plaintiff also learned of Defendant and its Infringing Products through its investigative efforts.

36.    Epstein Drangel placed an order of one of Defendant's Infringing Products via its Merchant Storefront. Defendant's Infringing Products are marketed to be placed under a natural lash line and, on information and belief, are made of similar synthetic fibers using similar technology, including by attaching clusters of lashes to a base by at least an application of heat.



37.     Defendant is currently offering for sale and/or selling Infringing Products through its User Accounts, Defendant's Merchant Storefront and Defendant's Website, accepting payment for Infringing Products in U.S. Dollars, and provides shipping and has actually shipped Infringing Products to the U.S., including to customers located in New York. Plaintiff's findings are supported by Defendant's Infringing Listings and the checkout pages for Infringing Products, which are included in the screenshots of the checkout pages for such Infringing Products purchased via Defendant's Website and Merchant Storefront, and from Defendant's Merchant Storefront on Amazon reflecting that the Defendant ships the Infringing Products to the New York Address, which are included in **Exhibit D**.

38.     Defendant is also advertising, promoting, offering for sale and/or selling Infringing Products via its social media User Accounts.

39.     In addition, Defendant was on constructive notice of the '020 patent by Lashify's marking of its patented products at least as early as February 2, 2022.

40.     Prior to bringing this action, Defendant had knowledge of Plaintiff's ownership of the Lashify Patent, of the fame, popularity and success of the Lashify System, and willfully chose to offer for sale and continue selling Infringing Products. Defendant has been engaging in the infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights.

41.     As discussed above, the Lashify Control Kit® is offered as a starter kit with a set of Gossamer® Lashes, applicator, bond, and sealer. Just like Lashify, Defendant makes and sells DIY cluster lashes kit including lash extensions for application under the lash, an applicator, bond, and sealer, as pictured below from one of Defendant's Infringing Listings.

11



Veleasha Lash Clusters Kit Waterproof
144PCS Eyelash Clusters kit D Curl
Cluster Lashes Kit Cluster Eyelash
Extension Wispy with Lash Bond and
Seal DIY Eyelash extension at
Home(Rose Kit-D-8-16mm)
Visit the Veleasha Store

42.    Just like Lashify, Defendant's Infringing Products are a lash system designed and marketed to be placed under the natural lash line and, on information and belief, are made of similar synthetic fibers using similar technology, including by attaching clusters of lashes to a base by at least an application of heat.

43.    As a direct and proximate consequence of Defendant's infringement of the Lashify Patent, Lashify has suffered irreparable harm, and Defendant has unjustly profited from such activities at Plaintiff's expense. Lashify will continue to suffer irreparable harm in the future unless Defendant is enjoined from infringing the Lashify Patent.

44.    Lashify is forced to file this action to combat the harm to its business caused by Defendant's infringement of the Lashify Patent, as well as to protect unknowing consumers from purchasing the Infringing Products sold by Defendant.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Infringement of United States Patent No. 11,253,020)
### [35 U.S.C. § 271]

45.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

46.    On February 22, 2022, the '020 patent, entitled "Artificial Lash Extensions," was duly and legally issued to Lashify by the United States Patent and Trademark Office. Lashify is

the lawful owner by assignment of all right, title, and interest in the '020 patent, including the rights to exclude others and to sue and recover damages for infringement. A true and correct copy of the '020 patent is attached hereto in **Exhibit A**.

47.    Without Plaintiff's authorization or consent, and with knowledge of Plaintiff's well-known and prior rights in the '020 Patent, Defendant intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, offered for sale and/or sold its Infringing Products to the purchasing public in direct competition with Plaintiff, and has acted with reckless disregard of Plaintiff's rights in and to the '020 Patent through such activities.

48.    Defendant's Infringing Products meet each and every limitation of at least claims 1, 3, and 5-6 of the '020 patent, literally and/or under the doctrine of equivalents, as shown in **Exhibit B**. For example, the Infringing Products are advertised as a "Lash Extension Kit" that are designed to attach adjacent to one another on the underside of natural lashes. The lash extensions comprise a plurality of artificial hairs, with groupings of the artificial hairs forming a plurality of clusters of artificial hairs, each comprising at least two artificial hairs. The hairs in the clusters are artificial because they do not comprise natural human hair, but instead a synthetic material, namely PBT, which on information and belief attaches when heated as in the Infringing Products. The lash extensions also comprise a base from which at least two hairs of each cluster protrude. Inspection of sample lashes, as well as photos and descriptions in one of Defendant's Infringing Listings, describe, advertise and show the lash extensions with the clusters connected to one another at the base confirm that heat is applied to form a "Hot Melt Band" that is "Long Lasting," as also shown in **Exhibit B**.

49.    Defendant's acts of infringement of the '020 Patent were and are undertaken without authority, permission, or license from Lashify. Defendant's infringing activities therefore

violate 35 U.S.C. § 271.

50.    As a direct and proximate consequence of Defendant's infringement of the '020 patent, Defendant has caused substantial monetary loss and irreparable harm and damage to Lashify, its business, its reputation and impairment of its valuable rights in and to the '020 Patent. Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendant will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff through infringement Lashify's rights to the '020 patent.

51.    Based on Defendant's actions as alleged herein, Defendant has had actual knowledge of the '020 patent and its infringement thereof and did nothing to stop its blatant use, copying, and infringement of Lashify's intellectual property. Accordingly, Defendant's infringement of the '020 patent is willful and Plaintiff is entitled to treble damages as provided by 35 U.S.C. § 284.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendant, as follows:

A.    A judgment that Defendant's acts constitute patent infringement under the causes of action asserted in this Complaint;

B.    An order preliminarily, and a judgment permanently, enjoining and restraining Defendant, its officers, agents, subsidiaries, servants, partners, employees, attorneys, and all others in active concert or participation with Defendant, from:

i.    infringing any claim of the Lashify Patent; and

ii.    assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the aforementioned activities.

C.    A judgment requiring Defendant to, at Defendant's expense, withdraw from the market, account for, and properly destroy any and all Infringing Products;

D.    A judgment requiring that Defendant pay Lashify all of its damages caused by Defendant's unlawful acts, including under 35 U.S.C. § 284, with prejudgment and post-judgment interest, as well as post-trial damages for any ongoing infringing acts;

E.    A judgment awarding Lashify its reasonable attorneys' fees, costs, disbursements, and interest, as provided by law, including as provided by 35 U.S.C. § 285;

F.    A judgment that Defendant's infringement has been willful, and ordering Defendant to pay treble damages as provided by law; and

G.    Such other relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all claims so triable.

Dated: February 20, 2025

Respectfully submitted,

EPSTEIN DRANGEL LLP

BY:    _____
Gabriela N. Nastasi
gnastasi@ipcounselors.com
Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Grace A. Rawlins
grawlins@ipcounselors.com
Jodi-Ann McLane (*pro hac vice* forthcoming)
jmclane@ipcounselors.com
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*Lashify, Inc.*

15